Lu, John T., J.
I.INTRODUCTION
The defendant, William Cyr (Mr. Cyr), moves to dismiss claiming that police violated the so called no-fix traffic citation statute requiring that Mr. Cyr receive a copy of the traffic citation at the time and place of the violation or within the time reasonably necessary to determine the violation.
The court finds that the approximately 14-day delay was not justified as to the indictment for operating after suspension and dismisses that indictment. However, as to the indictments for subsequent offender operating under the influence of alcohol offenses, the court finds that the delay was justified by the time necessaiy for police to prepare a subsequent offender operating under the influence prosecution, including drafting a search warrant application, and research of out-of-state (Vermont) prior offenses.[1] The court denies the motion to dismiss the subsequent offender operating under the influence of alcohol indictments.
II. FINDINGS OF FACT
Based on the evidence presented and reasonable inferences from the evidence, the court makes the following findings of fact:
1. On June 6, 2009, between 2:45 and 2:50 P.M., Mr. Cyr crashed his motorcycle on Route 128 South in Topsfield, Massachusetts.
2. Massachusetts State Police Trooper Anthony Vorias (Trooper Vorias) responded and saw Mr. Cyr, fire and medical personnel and other motorcycles.
3. Mr. Cyr, who was bleeding from the head, was being treated for a head and leg injury.
4. Trooper Vorias asked if he had been drinking and how much, and Mr. Cyr said that he had been drinking at the House of Mitch and that he had two Long Island Iced Teas.
5. Mr. Cyr smelled of alcohol and his eyes were glassy and bloodshot.
6. The trooper may have administered other field sobriety tests.[2]
7. Mr. Cyr’s injuries required that medical treatment be given priority over criminal investigation.
8. Mr. Cyr was transported to the Addison Gilbert Hospital.
9. Trooper Vorias did not go to the hospital that day.
10. Trooper Vorias needed to review Mr. Cyr’s Massachusetts arrest record, out-of-state arrest record, and consult with a Danvers state police barracks sergeant.
11. Review of the out-of-state arrest record, in the circumstances of this case, a potential subsequent offender operating under the influence charge, is a *478 significant undertaking because of the complexity and potential unreliability and ambiguity of out-of-state records.
12. He was able to do each of these things within 24 hours.
13. Trooper Vorias did not believe that the evidence obtained to this point was sufficient to charge Mr. Cyr with operating under the influence of alcohol because Mr. Cyr’s injuries would support claims that the injuries caused his symptoms of alcohol use and impairment.
14. He was essentially correct in that the case against Mr. Cyr would have been weak, but would have been adequate to justify issuance of a complaint.
15. Without the blood evidence, police might not have brought this case.
16. On Saturday, June 13, Trooper Vorias applied for a search warrant for Mr. Cyr’s blood test result from the hospital.
17. This was a significant delay for the most part justified by the challenges facing a non-lawyer, the trooper, in drafting a search warrant application suitable for submission to a court.
18. The search warrant was immediately granted, and Trooper Vorias went to the hospital and obtained records showing that Mr. Cyr had an elevated blood alcohol level.
19. Either that day or within 24 hours, Trooper Vorias wrote a citation and filled out an application for a complaint.
20. He sealed Mr. Cyr’s copy of the citation in an envelope, delivered the envelope to his troop commander’s office and placed it in the outgoing mail box.
21. On Thursday, June 18, postage was placed on the envelope and it was mailed to Mr. Cyr from the Danvers barracks to Mr. Cyr in Salem.
22. Mr. Cyr received the citation, and his only notice of the charges, on or about June 20, 2009.
23. This second delay (about four to five days), between placing the envelope in the outgoing mailbox and actual mailing, was negligent because mailing should have taken place within one to two days.
III. DISCUSSION
The defendant William Cyr (Mr. Cyr) argues that Trooper Vorias failed to comply with the exceptions to G.L.c. 90C, §2, requiring an officer to issue a citation “at the time and place of the violation.” The exceptions under §2 include situations in which “additional time was reasonably necessary to determine the nature of the violation or identity of the violator,” or “where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure.” G.L.c. 90C, §2. In those instances, “the violation shall be recorded upon a citation as soon as possible after such violation.” Id. If this requirement is not met, “the subsequent complaint [may be] dismissed without regard to whether the defendant suffered actual prejudice.” Commonwealth v. Marchand, 18 Mass.App.Ct. 932, 933 (1984), citing Commonwealth v. Perry, 15 Mass.App.Ct. 281, 283 (1983). It is the Commonwealth’s burden to demonstrate that one of the §2 exceptions applies. Commonwealth v. Mullins, 367 Mass. 733, 734-35 (1975).
Trooper Vorias’s testimony, which the court credits, that he asked Mr. Cyr to identify himself, inquired as to his biographical information, discovered that his driver’s license had been suspended, and generated his criminal record demonstrates that the first exception does not apply because operating a motor vehicle after suspension is a violation of G.L.c. 90, §23. Commonwealth v. Ryan, 22 Mass.App.Ct. 970, 971 (1986) (the need for further investigation of a reported larceny offense is irrelevant to the prompt issuance of a citation for a motor vehicle violation). No justification is provided for the delay in issuing a citation for the acts underlying the indictment for operating a motor vehicle after suspension or revocation of license. The Commonwealth has failed to meet its burden of proof on this issue. The question is not a close one.
On the other hand, a blood test or some other significant additional evidence was a practical necessity to support the operating under the influence charges, despite Mr. Cyr’s behavior consistent with intoxication and apparent unsatisfactory performance on field sobriety tests. Trooper Vorias’s concern for Mr. Cyr’s physical well being justified no further inquiry of Mr. Cyr at the crash scene, and there was ample support for his decision to delay the citation until the blood test result had been obtained because the lack of blood test evidence, or some other significant supplementary evidence, would have made a weak case against Mr. Cyr, one which police might have decided to forego.
The week’s delay in contacting Addison Gilbert Hospital in order to obtain the blood test results was largely justified. The preparation of a search warrant by a non-legally trained police officer (or perhaps even by an inexperienced attorney) is a significant undertaking that should not be underestimated by those accustomed to the content of such documents. This court does not understand its role to be to penalize police for very small delays beyond what it considers to be reasonable, for example, seven days instead of five. The remedy of dismissal is drastic. This delay is within the time period reasonably necessary to investigate this subsequent offender operating under the influence offense. Mr. Cyr’s position fails to appreciate the increasingly complex nature of the litigation of subsequent offender operating under the influence crimes.
No facts support an allegation of manipulation or misuse of the citation process, the so-called “no-fix” purpose. Commonwealth v. Pappas, 384 Mass. 428, *479 431 (1981); see also Perry, 15 Mass.App.Ct. at 283 (1983) (the purpose [of G.L.c. 90C, §2] is to provide “early advice to the offender about the violation being charged and whether he or she is to expect a complaint beyond a mere warning”).
The Commonwealth presented no evidence related to the later delay, between June 14, when Trooper Vorias placed the citation in the outgoing troop mailbox, and June 18, when the envelope containing the citation was postage-stamped and mailed. When Mr. Cyr received the citation on June 20th, it had been fourteen days since the accident. Commonwealth v. Marchand, 18 Mass.App.Ct. at 933 (1984) (forty-one-day delay in issuing a second citation related to an accident leading to death justified dismissal of complaint due to “serious inattention by the police or at best an ‘unexplained mistake’ ”), citing Commonwealth v. Mullins, 367 Mass. 733, 736 (1975). The unexplained mistake causing delay in mailing in this case is similar to facts presented in Commonwealth v. Mullins, 367 Mass. 733 (1975), where the court found that a nineteen-day delay in mailing the defendant a citation warranted dismissal. Mullins, 367 Mass, at 735-36. The officer in Mullins failed to promptly send the citation due to his mistaken belief that a registry inspector had already done so. Id.
This situation is distinguishable from the one presented in Mullins because the mailing delay was much longer in Mullins. Although the mailing delay in this case was negligent, it was not “serious inattention by the police or at best an unexplained mistake.”
Mr. Cyr’s motion alleges a violation of G.L.c. 90C, section 2, para. 5. Commonwealth v. Clinton, 374 Mass. 719 (1978), cited by Mr. Cyr for the proposition that an eight-day delay is too long interprets a different provision of G.L.c. 90C, sec. 2.
ORDER
The Defendant, William Cyr’s, motion to dismiss (paper # 11) is ALLOWED as to indictment no. 148-003 charging operating a motor vehicle after suspension or revocation of one’s license to operate. It is DENIED as to indictment nos. 148-001 and 148-002.

 Mr. Cyr is charged with fifth-offense operating under the influence offenses.

 At the evidentiary hearing, the trooper thought he had but was unsure.